IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

RIMON KAZZOO, )
)
              Petitioner, )
)
v. )    Case No. 25-3262-JWL
)
C. CARTER, Warden, FCI Leavenworth; )
F/N/U WENDLER, Deportation Officer, ICE; )
TODD LYONS, Acting Director, ICE; )
PAM BONDI, Attorney General; and )
Secretary, Department of Homeland Security, )
)
              Respondents. )
)
_____)

## MEMORANDUM AND ORDER

Petitioner, acting *pro se*, filed a petition for habeas corpus under 28 U.S.C. § 2241, by which he challenges his detention by immigration officials. For the reasons set forth below, the Court **grants** the petition. Respondents shall release petitioner from custody, subject to an appropriate order of supervision, by **January 26, 2026**, and shall provide notice to this Court when that release is effected.

Petitioner is a native and citizen of Iraq. Petitioner was admitted to the United States in 2014 as a lawful permanent resident. In 2021, petitioner was convicted of assault in Illinois state court, and on January 2, 2025, upon his release by state authorities, he was taken into custody by immigration officials, who initiated removal proceedings. On May 21, 2025, an immigration judge ordered petitioner's removal but granted his application

for relief, with the result that petitioner may not be removed to Iraq but may only be removed to an alternative third country. Petitioner is presently detained within this judicial district. On December 4, 2025, petitioner filed the instant habeas action; respondents have filed a response to the petition, petitioner has filed a reply brief, and the matter is therefore ripe for ruling.

Petitioner claims that his continued detention by immigration authorities is improper. To obtain habeas corpus relief, petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." *See* 28 U.S.C. § 2241(c)(3). This Court has habeas corpus jurisdiction to consider the statutory and constitutional grounds for immigration detention that are unrelated to a final order of removal. *See Demore v. Kim*, 538 U.S. 510, 517–18 (2003).

Generally, when an alien is ordered removed, the removal is to occur within a period of 90 days, referred to as the "removal period." *See* 8 U.S.C. § 1231(a)(1)(A). Petitioner's removal period began, at the latest, on June 20, 2025, the date of his removal order became final after the expiration of the 30-day appeal period. *See id.* § 1231(a)(1)(B)(i).[1] Specifically, petitioner claims that, after more than six months since the beginning of the

---

[1] Petitioner claims in his petition that his order became final and his removal period began on May 21, 2025, but in his traverse he does not contest respondents' argument that the order became final 30 days later. Neither side has provided the Court with a copy of the removal order, and therefore the Court cannot determine whether the parties had waived any appeal from the order, which waivers would have made the order final upon issuance. Accordingly, because petitioner has not established that an earlier date should be used, the Court has used the date of June 20, 2025, in its analysis. In any event, more than six months have elapsed since the start of the removal period, and the *Zadvydas* framework is therefore triggered.

removal period, his detention has become unreasonably indefinite, and that his release is therefore required under the framework set forth by the Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001).

In *Zadvydas*, the Supreme Court noted that an alien must be detained during the 90-day removal period and that the Government may continue to detain an alien after that period or release the alien under supervision. *See id.* at 683 (citing 8 U.S.C. § 1231(a)(2), (6)). The Court held, however, that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by the statute." *See id.* at 699. The Court elaborated on that standard as follows:

> In answering that basic question, the habeas court must ask whether the detention in question exceeds a period reasonably necessary to secure removal. It should measure reasonableness primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal. Thus, if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute. In that case, of course, the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions. . . .
>
> We recognize, as the Government points out, that review must take appropriate account of the greater immigration-related expertise of the Executive Branch, of the serious administrative needs and concerns inherent in the necessarily extensive INS efforts to enforce this complex statute, and the Nation's need to "speak with one voice" in immigration matters. But we believe that courts can take appropriate account of such matters without abdicating their legal responsibility to review the lawfulness of an alien's continued detention.

*See id.* at 699-700 (citations omitted). The Supreme Court then established a presumptively reasonable detention period of six months in which to accomplish removal, after which the reasonableness of an alien's detention should be determined as follows:

3

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*See id.* at 701; *see also, e.g.*, *Anyimu v. Department of Homeland Security*, 2017 WL 193180, at *2-3 (D. Kan. Jan. 18, 2017) (Lungstrum, J.) (applying this framework); *Kaliku v. United States Immigration and Customs Enforcement*, 2024 WL 4854523, at *2-3 (D. Kan. Nov. 21, 2024) (Lungstrum, J.) (same); *Vargas v. Noem*, 2025 WL 2770679, at *2-3 (D. Kan. Sept. 29, 2025) (Lungstrum, J.) (same).

The Court finds that petitioner has met his burden to provide "good reason to believe that there is no significant likelihood of [his] removal in the reasonably foreseeable future." It is true, as respondents note, that the six-month presumptively-reasonable period has not been exceeded by a great amount in this case, as almost seven months have elapsed since the start of the removal period. Nevertheless, because more than six months have passed, the *Zadvydas* analysis is triggered; and the Court finds in this case that petitioner has provided the necessary "good reason." Respondents argue that officials have made inquiries to three alternative countries for petitioner's removal and that those requests remain pending; but those early attempts, in May 2025, have proved unsuccessful, as none of the three countries has even responded to the request, and there is no evidence that

4

officials have made *any* additional efforts in the last seven months to remove petitioner.[2] Thus, because attempts have failed with respect to officials' first three choices for an alternative country, and because no additional inquiries have been made in the last seven months, there is at least good reason to believe that there is no significant likelihood of petitioner's removal in the reasonably foreseeable future.

The Court further finds that respondents have not rebutted that showing. Again, according to a declaration from an immigration official, no response has been received from the three alternative countries to which requests were made in May 2025. Neither respondents nor the declarant have offered any reasons for the lack of any response, and thus there is no reasonable basis to believe that one of those countries will respond positively in the reasonably foreseeable future. Most significantly, there is no evidence that officials have made inquiries to any other countries in the last seven months or even done *anything at all* with respect to petitioner's removal during that time, except to wait and hope for a positive response to one of the initial inquiries. Respondents have not even identified another alternative country to which they believe petitioner might be removed in the future. *See, e.g*, *Manago v. Carter*, 2025 WL 2841209, at *2-3 (D. Kan. Oct. 7, 2025) (citing similar facts in concluding that the respondents failed to rebut the petitioner's showing under *Zadvydas*). This failure is especially disheartening in light of this Court's repeated complaints about the lack of such explanations in the Government's submissions.

---

[2] In similar habeas cases, the declaration submitted by the respondents often notes that officials have made inquiries within the agency for help identifying an alternative country for removal, but it does not appear that any such inquiries have been made in petitioner's case.

*See, e.g.*, *Gonzalez Gutierrez*, __ F. Supp. 3d at __, 2025 WL 3454295, at *2-3. Most significantly, there is no analysis or explanation specific to petitioner's case, as, again, respondents have not attempted to explain why previous efforts to find a removal country for petitioner have been unsuccessful or why efforts are likely to be successful in the reasonably foreseeable future.

In sum, respondents have not been able to provide evidence or even point to any specific fact that creates a significant likelihood that, even though officials failed in their first attempts to remove petitioner to a third country, and even though they have seemingly made no additional efforts regarding other countries in the last seven months, petitioner will nonetheless be removed to a third country in the reasonably foreseeable future. Petitioner's detention has become unreasonably indefinite, and the Court therefore concludes that petitioner must be released, subject to appropriate terms of supervision. *See Zadvydas*, 533 U.S. at 700.

Accordingly, the Court grants the petition for habeas relief, and respondents are ordered to effect petitioner's release by **January 26, 2026**.

IT IS THEREFORE ORDERED BY THE COURT THAT the petition for habeas corpus pursuant to 28 U.S.C. § 2241 is hereby **granted**. Respondents shall release petitioner from custody, subject to an appropriate order of supervision, by **January 26, 2026**, and shall provide notice to this Court when that release is effected.

IT IS SO ORDERED.

Dated this 15th day of January, 2026, in Kansas City, Kansas.

/s/  John W. Lungstrum
Hon. John W. Lungstrum
United States District Judge